KENILWORTH INSURANCE COMPANY, Plaintiff-Appellee, *v.* WILLIE E. McDOUGAL *et al.,* Defendants-Appellants.

(No. 72-293;

Second District—July 8, 1974.

Melvyn L. Medansky, of Medansky, Cohan, Medansky & Valentine, of Chicago, for appellants.

Rathje, Woodward, Dyer & Burt, of Wheaton, for appellee.

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

The plaintiff, Kenilworth Insurance Company (Kenilworth), a corporation, filed a declaratory judgment suit against the defendants, seeking a declaration that there was no insurance coverage under the uninsured motorist provision of its policies which insured the driver and the owner of the car involved in an accident. (The policies are identical and will be referred to as the policy.) By its verdict the jury found that there was no physical contact between the insureds' vehicle and that of an unidentified motorist. Thereupon the court entered judgment which adjudicated that no coverage existed under the terms of the policy.

Defendants appeal from the declaratory judgment, contending that Du Page County was improper venue for the action, that Kenilworth is estopped from asserting noncoverage, that the verdict of the jury is against the manifest weight of the evidence, and that certain evidentiary errors require a new trial.

The accident occurred in Du Page County when the car which the defendant Willie E. McDougal was driving and in which the remaining defendants were passengers, crossed the median on Interstate 55 into the wrong lane of travel causing a multiple collision. The defendants filed a timely limited appearance challenging venue in Du Page County and moving for a change of venue to Cook County. In support of their motion they alleged their residence in Cook County, the execution of the insurance policy in Cook County, and the policy requirement that ar-

bitration take place in Cook County. Defendants contend on appeal that dealings with third parties are not to be considered in fixing venue and that the court erroneously denied their motion on the mistaken basis that the accident itself was a part of the "transaction" for determining venue.

Section 5 of the Civil Practice Act (Ill. Rev. Stat. 1971, ch. 110, par. 5) provides as material here:

> "*Venue—Generally.* Except as otherwise provided in this Act, every action must be commenced (a) in the county of residence of any defendant who is joined in good faith and with probable cause for the purpose of obtaining a judgment against him and not solely for the purpose of fixing venue in that county, or (b) *in the county in which the transaction or some part thereof occurred out of which the cause of action arose.*" (Emphasis added.)

■■ "Transaction" has been defined to include every fact which is an integral part of a cause of action. (*People ex rel. Carpentier v. Lange* (1956), 8 Ill.2d 437, 441; *Beatrice Foods Co. v. Gallagher* (1964), 47 Ill.App.2d 9, 15; *Christopher v. West* (1952), 345 Ill.App. 515, 528.) The facts of the accident, particularly with reference to whether or not there was physical contact between the insureds' vehicle and the vehicle of the uninsured motorist, clearly appear to be an integral part of plaintiff's cause of action to establish noncoverage under the policy. We agree with plaintiff's view that the real question to be decided in the declaratory judgment action does not lie in the interpretation of the insurance contract but in the resolution of the facts of the automobile accident. An action for declaratory judgment is neither legal nor equitable and the forum depends on the issues involved and the relief sought. (*Vermilion County Good Government League, Inc. v. Smith* (1965), 64 Ill.App.2d 270, 275.) The "transaction" which is determinative of the relief sought in the declaratory judgment action, the declaration of noncoverage, is the accident which occurred in Du Page County.

■■ Defendants' contention that dealings with third parties are not to be considered in fixing venue is overbroad when applied in the context of this case. There are cases which use the language that the transaction refers only to dealings between the parties themselves and not to dealings which one of the parties had with third persons which are incidental or preliminary to and do not form the basis for the cause of action. (See *American Oil Co. v. Mason* (1971), 133 Ill.App.2d 259, 260-261; *Winn v. Vogel* (1952), 345 Ill.App. 425, 431-432.) But where dealings with third parties have a definite and direct bearing on the cause of action (for the purpose of determining venue), such dealings are part of the transaction out of which the cause of action arose. (See *Bagarozy v. Meneghini* (1955), 8 Ill.App.2d 285, 288-291; *First National Bank v. Bauer Poultry*

*Corp.* (1952), 345 Ill.App. 315.) Our conclusion is buttressed by the fact that section 5(b) of the Civil Practice Act (Ill. Rev. Stat. 1971, ch. 110, par. 5(b)) is intended for the convenience of witnesses (*Christopher v. West,* 345 Ill.App. 515, 527), and the ease of proving local surroundings where these may be material, as in the case of an automobile accident. (*Mapes v. Hulcher* (1936), 363 Ill. 227, 230-231.) The court correctly ruled below that venue was proper in Du Page County.

In reaching the merits of the case, we view the estoppel issue as crucial and examine the facts bearing on that question.

The accident took place on August 10, 1969, and claims were asserted under the uninsured motorist provisions of the policy on August 27, 1969. The declaratory judgment action was filed on June 23, 1970, and there is no indication in the record that prior to that time Kenilworth either denied coverage or proceeded under a reservation of rights.

Defendants filed an answer to the complaint on November 23, 1970, in which they conceded that there must be physical contact with a hit-and-run vehicle under the terms of the policy, but alleged that such physical contact did occur. Kenilworth thereafter provided a bill of particulars and answered interrogatories in response to defendants' demands. Essentially Kenilworth informed defendants of the names of persons, including the defendants, from whom statements or information had been received to support Kenilworth's allegations in the declaratory judgment action that the car crossed into the wrong lanes for no ostensible reason or, in the alternative, to avoid a collision with an unidentified automobile with which there was no physical contact. Following this, on January 20, 1972, defendants, pursuant to leave granted, filed an amendment to their answer which added an affirmative defense of estoppel.

In their affirmative defense, defendants set forth that they had furnished, pursuant to Kenilworth's request, documentation of the facts of the accident on August 27, 1969; had answered interrogatories under oath on September 3, 1969, and on October 20, 1969; that defendants, pursuant to Kenilworth's request, submitted medical reports and information as to expenses incurred; and that at no time prior to July 6, 1970, did Kenilworth advise defendant of the policy defense of no physical contact.

Kenilworth filed a motion to strike the affirmative defense, but the record discloses no formal disposition of the motion nor any reply to it. On February 7, 1972, defendants moved for dismissal or judgment on the pleadings based upon the affirmative defense and upon the failure to reply. Kenilworth argued at the hearing on defendants' motion that no estoppel could lie because the declaratory judgment action was brought within 1 year of the accident. The court denied defendants' motion for

judgment on the pleadings adding that the estoppel argument would have had merit if lengthy settlement negotiations had taken place, that as the court understood it no such lengthy negotiations had taken place, but rather that there was a delay alleged by Kenilworth in the investigation of the matter. Counsel for the insureds made no mention at this point of any settlement negotiations.

We can find no reference in the record to support the court's "understanding" that there had been no lengthy negotiations or that the delay was caused by the insurance company's investigations. Moreover, it is not entirely clear from the record whether the court, in addition to denying defendants' motion for a dismissal of the complaint or in the alternative for judgment on the pleadings, was also granting Kenilworth's prior motion to strike the affirmative defense. It appears from the record that the court's repeated conclusion that estoppel did not lie as a matter of law was understood by the parties as withdrawing presentation of the estoppel issue from the jury. No evidence bearing on the estoppel issue was presented to the jury at the trial of Kenilworth's declaratory judgment suit.

Nevertheless both parties, in the hearing on the post-trial motion and in briefs and argument have alluded to factual matters on the estoppel issue. Although no such findings of fact were made below, defendants argue that Kenilworth took the court-reported statements of all occurrence witnesses and of the defendants between September 8, 1969, and November 11, 1969; that although subsequent statements were taken from some of the witnesses, no subsequent information was obtained by Kenilworth; that Kenilworth possessed all the facts necessary to ascertain whether it had a policy defense on November 11, 1969, yet it did not advise defendants of the denial of coverage until July 6, 1970; that after November 11, 1969, defendants supplied Kenilworth with medical reports, loss-of-wage statements and other documents; that defendants further expended time in negotiations and "trial preparation" and were lulled into not conducting their own investigation which might have led to finding the identity of the uninsured motorist. Conversely, and again without evidence in the record, Kenilworth argues that it was investigating the facts pertaining to the claims of persons in the other vehicles involved in the accident; that substantial information was gained after November 11, 1969; and that the complaint for declaratory judgment was filed within a reasonable time, approximately 3 months after its final investigation of the accident.

Under the state of the record as presented to us we are unable to properly review the trial court's disposition of the estoppel issue. In fairness to all parties, in view of the perfunctory treatment of the issue

from what does appear of record, we will remand the cause for the limited purpose of deciding the estoppel issue upon amended pleadings if desired and upon the presentation of evidence bearing on the issue. We are justified in this course of action because defendants' affirmative defense, although inartfully pleaded and argued in the court below, does give rise to the defense of estoppel.

■■ Generally, no intention to waive rights can be inferred against one entitled thereto when he is ignorant of the existence of such rights. (*Security Insurance Co. v. Mette* (1888), 27 Ill.App. 324, 329.) However, an insurer may waive a policy defense by continuing under a policy when it knows, or in the exercise of ordinary diligence, could have known the facts in question giving rise to the defense. (*Zak v. Fidelity-Phenix Insurance Co.* (1966), 34 Ill.2d 438, 443; 22 I.L.P. *Insurance* sec. 356.) If the insurance company is fully advised of the facts bearing on its policy defense and does not then insist on noncoverage but recognizes the continued validity of the policy by requiring the insured to go to the trouble and expense, if any, of preparing proofs of loss and related matter, an intention to waive the policy defense would follow. *Traders' Mutual Life Insurance Co. v. Johnson* (1902), 200 Ill. 359, 363; *Covenant Mutual Life Ass'n v. Baughman* (1898), 73 Ill.App. 544, 549; *Rockford Insurance Co. v. Travelstead* (1889), 29 Ill.App. 654, 659; 16A Appelman on Insurance (1968), sec. 9258; 22 I.L.P. *Insurance* sec. 362; 43 Am. Jr. 2d *Insurance* sec. 1148, p. 1071.

■■■ Strong proof is not required to show a waiver of a policy defense, but only such facts as would make it unjust, inequitable or unconscionable to allow the defense to be interposed. (*O'Brien v. Country Mutual Insurance Co.* (1969), 105 Ill.App.2d 21, 24.) And regardless of the stage of proceedings, an insurer may waive his right to assert nonliability if his actions have prejudiced the insured. (*Opheim v. Norfolk & Western Ry. Co.* (1970), 123 Ill.App.2d 211, 216.) Further, while a long delay without explanation in asserting a policy defense or disclaimer is normally not enough to constitute an estoppel or waiver, such delay is an important factor to be considered where there is evidence of prejudice; and the length of delay is an element in determining the reasonableness or fairness of the insurer's conduct toward the insured. See *Zak v. Fidelity-Phenix Insurance Co.* (1966), 34 Ill.2d 438, 444; *Anderson v. Safeway Insurance Co.* (abstract opinion 1973), 10 Ill.App.3d 597; *McMahon v. Coronet Insurance Co.* (1972), 6 Ill.App.3d 704.

Applying these principles on remand the trial court or a jury will have to determine the question of when Kenilworth should have known of its policy defense, how long thereafter Kenilworth delayed in asserting it, what actions defendants took at the request of Kenilworth or in re-

liance on policy coverage after Kenilworth knew or should have known of its policy defense but failed to assert it, and thus whether Kenilworth acted unreasonably in delaying to assert its policy defense of no-contact. These are questions of fact. *Dwelling House Insurance Co. v. Dowdall* (1895), 159 Ill. 179, 186; *Wille v. Farmers Equitable Insurance Co.* (1967), 89 Ill.App.2d 377, 381; *Cox v. American Insurance Co.* (1913), 184 Ill.App. 419, 423.

We conclude that the finding of the jury in the declaratory judgment action that there was no contact between the defendants' vehicle and the unidentified vehicle is not against the manifest weight of the evidence, and that there was no evidentiary error sufficient to reverse. Thus, if the estoppel issue is found in favor of Kenilworth the trial court is directed to reinstate the judgment below.

■■ Both Mr. and Mrs. Rygula, as disinterested occurrence witnesses, testified that no vehicles came in contact with or close enough to cut off the Buick being driven by defendant Willie McDougal before it left the Chicago-bound lanes of I-55. Mr. and Mrs. Johnson, also disinterested occurrence witnesses, did not see any contact but did see a car cut the Buick off. They did not know whether there was any contact. Mr. Johnson testified that he knew that the defendant driver of the Buick was trying to dodge the car that cut over when it hit loose dirt on the side of the road and control was lost. In contrast the four defendants all testified to a violent contact with the vehicle that cut over. There was also testimony of admissions shortly after the accident by one of the defendants that there was no contact and by another of the defendants that she did not know whether there was any contact. Under this state of the record the credibility of the defendants as witnesses was for the jury and its verdict is sufficiently supported by the evidence. See *Glazer v. Country Mutual Insurance Co.* (1971), 131 Ill.App.2d 586, 590.

Defendants claim that the testimony of Mrs. Rygula was improperly rehabilitated by resort to prior consistent statements after she had been impeached on cross-examination. The question involved related to whether other cars were near the Buick when it went off the road.

■■ Prior out-of-court statements consistent with direct testimony cannot be used to rehabilitate the direct testimony even after impeachment on cross-examination. (*Stolp v. Blair* (1873), 68 Ill. 541, 543-544; *Biela v. Messner* (1958), 18 Ill.App.2d 236, 244.) However, to avoid unfairness it is permissible to explain or qualify the impeaching statement from the same document by showing that the impeaching statement was taken out of context or so isolated as to be misleading. (*People v. Hicks* (1963), 28 Ill.2d 457, 462; *Schmitt v. Chicago Transit Authority* (1962), 34 Ill.App.2d 67, 72-73.) We conclude from the record that one

of the two prior statements here questioned falls within the purview of the latter rule; and the other, while improper from another document taken at another time, was not prejudicial.

For the reasons stated we therefore reverse and remand the cause for further proceedings consistent with this opinion.

Reversed and remanded, with directions.

GUILD and RECHENMACHER, JJ., concur.