BOARD OF EDUCATION, BREMEN COMMUNITY HIGH SCHOOL DISTRICT 228, Plaintiff-Appellant, *v.* DISTRICT 228, JOINT FACULTY ASSOCIATION *et al.*, Defendants-Appellees.

(No. 55242;

First District—February 11, 1972.

*Rehearing denied March 14, 1972.*

144

Scariano and Gubbins, of Chicago Heights, (Michael P. Duncan, of counsel,) for appellants.

Drach, Terrell and Deffenbaugh, of Springfield, (Robert W. Deffenbaugh, of counsel,) for appellees.

Mr. PRESIDING JUSTICE LORENZ delivered the opinion of the court:

Plaintiff filed a complaint seeking to enjoin defendants from striking various schools. A court order issued pursuant to that complaint temporarily restrained defendants from striking and engaging in various other practices. It also ordered the parties to proceed to mediation. After several unsuccessful mediation sessions the parties jointly appointed an arbitrator to conduct "binding fact-finding." The fact-finding resulted in an "award" which, in eight specific areas, established what further action the parties should take. The parties eventually arrived at mutually acceptable interpretations of all but one item, number eight, which the court attempted to interpret. It is from a court order interpreting item eight that he plaintiff appeals.

The complaint for injunction filed by plaintiff on January 19, 1970, alleges in substance the following: that plaintiff is a duly organized and existing school board; that plaintiff offers instruction in the high school grades to more than 5500 students and employs approximately 289 teachers; that defendant District 228 Joint Faculty Association is a voluntary labor organization acting as the collective bargaining agent of almost all of the certified personnel within the school district and is comprised of defendants Bremen, Hillcrest and Tinley Park Faculty Associations whose members are employed at their respective high

schools; that all personnel working in plaintiff school district are doing so under contract for the academic year 1969-1970; that on January 19, 1970, defendant associations and the teachers employed by plaintiff began a strike and work stoppage and 213 of 289 teachers failed to report to work, many of whom began picketing the schools; that for several months plaintiff and defendant had been renegotiating salaries and other matters; that disagreement exists only with respect to questions of salary; that, as a result of the failure of 213 teachers to report to work, plaintiff cannot carry out its regular educational program; that plaintiff cannot obtain 213 substitute teachers and therefore had to close the schools and turn away those students who did report for instruction; that the operation of the schools has been interfered with, the students are without teachers, supplies will not be delivered, and the buildings will not be cleaned and maintained; that the actions of defendants are illegal, unlawful, wrongful and contrary to law; that the actions of defendants have caused, are causing and will cause irreparable harm and damage to plaintiff, its students, their parents, the citizens and taxpayers of the school district, and the school buildings; that plaintiff has no adequate remedy at law and that plaintiff's rights, duties and obligations will be unduly prejudiced if the injunction therein prayed for was not immediately issued. Plaintiff requested temporary and permanent injunctive relief and "such other and further and different relief, either injunctive or otherwise, and either temporary or permanent, as plaintiff may be entitled in equity to receive from time to time."

The record on appeal reveals that no pleading was filed in response to this complaint and that defendants, although duly served with notice, did not participate in the resultant hearing which took place on the day the complaint was filed. The order, entered by the court after that hearing, enjoined defendants from engaging in various acts disruptive to the educational process in plaintiff school district and ordered defendant associations and their members to cease the strike and work stoppage and return to work. At the request and agreement of the parties the order additionally commanded, "3. That the parties proceed forthwith to select a mediator from the education panel of the American Arbitration Association and that they immediately thereafter proceed to mediation and that the parties report to this court the progress made within two weeks herefrom, *i.e.*, on 2-2-70 at 10 A.M. without further notice."

In accord with the court's order and their agreement, the parties took their dispute to the American Arbitration Association. At that time, the parties joined in defining the issues before the mediator as being, "(1) Method of computing the salary index for 1969-70; (2) The base amount

on the salary schedule for 1969-70; (3) Inclusion of a BA+15 lane in the salary schedule for 1969-70; and (4) Inclusion of an MA+60 lane in the salary schedule for 1969-70." After six unsuccessful mediation sessions the parties jointly appointed an arbitrator for the purpose of conducting "binding fact-finding." There is no indication that the parties broadened the scope of the proceedings when they submitted their dispute to the arbitrator.

On March 27, 1970, after the conclusion of the binding fact-finding, the arbitrator issued a "Fact-Finding Award and Opinion" wherein he specified, in eight items, action which the parties should take. For purposes of implementation the parties agreed upon interpretations which would be placed upon all but one part of the award, item eight. This item read, "Teachers who struck shall not be paid for the days they took off,[1] but on the other hand, they shall not be required to work any days without pay in the mandated plan. However, the parties may negotiate this matter if they can find a satisfactory arrangement." Prior to the issuance of the award, defendant apprised the arbitrator that plaintiff intended to have the teachers make up the days missed because of the strikes and on March 24, 1970, plaintiff determined that only March 30 and 31 were to be special holidays.[2] The parties are in agreement that those teachers who went on strike were not to be paid for the two days they took off, but the board contends that they could not be made up by working the two days in April which were considered by it as regular school days necessary to complete the statutory school year. Because the parties were not able to reach a satisfactory arrangement with respect to the implementation of item eight, the court, on May 1, 1970, ordered them to submit memoranda in support of the interpretation of that item which the respective parties deemed appropriate. On May 22, 1970, after consideration of the arguments, the court ordered, "[T]hat the Board of Education, Bremen Community High School, District 228 shall according to point number eight of Mr. Sembower's award-pay the teachers who worked on April 1 and April 2, 1970, two days pay for the work they performed on those two days in order to make up for the

---

[1] Defendant associations struck plaintiff on September 18, 1969, and on January 19, 1970. Each strike lasted only one day.

[2] The original calendar, drawn in accord with Ill. Rev. Stat. 1969, ch. 122, par. 10—19, provided, "Depending on weather during winter months, or other emergency school closings, the Board of Education will consider five special holidays on: March 30, March 31, April 1, April 2, April 3." It is clear from this language that the board had not predetermined that all these days were to be holidays, since school sessions might be required on one or more of them to complete the statutory number of school days required in a year, and thus to make up for school closings due to weather, etc. The parties agreed that one of those days was to be so utilized.

two days they previously missed on September 18, 1969 and January 19, 1970. Such payment shall be included on the check presented to the teachers on June 5, 1970, the last day of school."

*Opinion*

■■ Plaintiff contends, *inter alia,* that the matter embodied in item eight was not submitted to the arbitrator.

In *Flood v. Country Mutual Ins. Co.* (1968), 41 Ill.2d 91 the court stated at page 94:

"Despite the salutary purpose of our Arbitration Act, parties are only bound to arbitrate those issues which by clear language they have agreed to arbitrate; arbitration agreements will not be extended by construction or implication."

(See also *Safeway Ins. Co. v. Parker* (1969), 105 Ill.App.2d 208, 210 and Ill. Rev. Stat. 1969, ch. 10, par. 112(a)(3).) The court in *Blades, Inc. v. Jarman Memorial Hospital Building Fund, Inc.* (1969), 109 Ill. App.2d 224, in considering the above quoted language from *Flood,* said at page 226:

"This language is simple, clear and concise. Whether or not and what they arbitrate must be stated in the contract between the parties in crystal clear language unextended and unenlarged either by construction or by implication."

■■ The parties to this appeal joined in defining the issues before the mediator as being: "(1) Method of computing the salary index for 1969-70; (2) The base amount on the salary schedule for 1969-70; (3) Inclusion of a BA+15 lane in the salary schedule for 1969-70; and (4) Inclusion of an MA+60 lane in the salary schedule for 1969-70." It is readily apparent that the question of whether the teachers should receive pay for the days they struck or whether they should be entitled to payment for making up that time by working on days they would have had to work to ensure that the schools were in session for the required number of pupil attendance days[3] was not submitted to the arbitrator. The fact that the teachers were docked for the days they struck came to the arbitrator's attention through the defendant's brief where the matter was discussed as a basis for its demand for an increased starting salary. While the later briefs of the parties to the arbitrator discuss this matter further, the discussions were peripheral to the matter expressly submitted to the arbitrator. From any view, the language of those briefs fails to establish with the requisite clarity that the parties submitted the matter embodied in item eight to the arbitrator for his determination. Additionally, there is nothing of record in this

---

[3] See Ill. Rev. Stat. 1969, ch. 122, par. 10—19.

appeal which would indicate that such a submission was ever made. The failure of the parties to submit the matter to the arbitrator's discretion may have been recognized by the arbitrator himself when, in discussing the matter, he stated, "For the sake of completeness, however, [item eight] should be a subject of the Award herein," and when he stated in item 8 itself; "the parties may negotiate this matter if they can find a satisfactory arrangement."

■■ Because the arbitrator exceeded the powers granted to him by the agreement between the parties, his decision is void and unenforcable to the extent such powers are exceded. (*Nuest v. Westinghouse Air Brake Co.* (S.D. Ill. 1970), 313 F.Supp. 1228, 1234.) Thus, the trial judge sought to bind the parties with an interpretation of a void and unenforceable part of the award when he entered his order concerning item eight. From what is set forth above, it is also apparent that there was no pleaded issue before the court upon which the order could have been based, nor is there anything in the record to justify the payment of public funds, other than their annual salaries to the striking teachers for work done on April 1 and 2.

The order appealed from is therefore reversed.

Order reversed.

DRUCKER and ENGLISH, JJ., concur.